```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
DAVID EHRICH,                                    :
                                                 :
                               Plaintiff,        :
                                                 :        **MEMORANDUM & ORDER**
              - against -                        :
                                                 :
CREDIT PROTECTION ASSOCIATION, L.P.,             :        No. 10 CV 05863 (ERK) (VMS)
                                                 :
                               Defendant.        :
------------------------------------------------------------ X
```

KORMAN, J.:

On December 16, 2010, David Ehrich filed a complaint against Credit Protection Association, L.P. ("CPA") on behalf of himself and all others similarly situated, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 USC § 1692 *et seq*. Ehrich alleges that CPA sent him a collection note in November 2010 seeking to recover a debt owed to Time Warner Cable Company. Ehrich does not dispute the validity of the debt CPA sought to collect, nor does he claim that the primary text of the letter violates the FDCPA. Rather, Ehrich bases his claim on two Spanish sentences at the top and bottom of the letter, which roughly translate English language printed nearby.

Printed at the top of the letter is the phrase "aviso importante de cobro," which Ehrich, relying on a Google translation website, translates as "important collection notice." (Pl.'s 2/27/12 Certif. Ex. A.) At the bottom of the collection notice are three Spanish phrases: "Opciones de pago," "Llame" followed by a phone number, and "Envíe MoneyGram," which Ehrich translates as "Payment options," "Call" and "Send MoneyGram." (*Id.*) Ehrich, who does not speak Spanish, claims that the notice's inclusion of these Spanish phrases without a Spanish translation of the FDCPA-mandated disclosures and notices provided in English could mislead

1

Spanish-speaking consumers and cause them to inadvertently waive their rights under the FDCPA.

On February 13, 2012, CPA moved for summary judgment pursuant to Fed. R. Civ. P. 56. In lieu of responding to CPA's motion, Ehrich moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 on February 27, 2012.

## DISCUSSION

The FDCPA, enacted in 1977, aimed to "eliminate abusive debt collection practices." 15 U.S.C. § 1692(e). Among many other reforms, the FDCPA prohibits harassing or oppressive conduct on the part of debt collectors, and it requires debt collectors to provide notice to debtors of their right to require verification of a debt. *Id.* § 1692d, 1692g. *See generally Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 89-91 (2d Cir. 2008). Both the text of the FDCPA and its legislative history emphasize the intent of Congress to address the previously common and severe problem of abusive debt collection practices and to protect unsophisticated consumers from unscrupulous debt collection tactics. 15 U.S.C. § 1692(a)-(e); S. Rep. No. 95-382, at 4 (1977). The Act was not intended to enable plaintiffs to bring serial lawsuits against different debt collector defendants alleging various and often insignificant deviations from the Act's provisions. This, however, is the use to which Ehrich has put the FDCPA, filing a total of nine complaints, including the present case, over the past seven years. *Ehrich v. Am. Recovery Sys.*, ECF no. 1:06-cv-01306 (E.D.N.Y.); *Ehrich v. Linebarger Goggan Blair & Sampson*, ECF no. 1:06-cv-05077 (E.D.N.Y.); *Ehrich v. Fed. Bond and Collection Service*, ECF no. 1:07-cv-03924 (E.D.N.Y.); *Ehrich v. West Asset Mgmt.*, ECF no. 1:07-cv-00291 (E.D.N.Y.); *Ehrich v. Diversified Collection Services*, ECF no. 1:08-cv-01432 (E.D.N.Y.); *Ehrich v. I.C. Sys.*, ECF no. 1:09-cv-00726 (E.D.N.Y.); *Ehrich v. RJM Acquisitions LLC*, 1:09-cv-02696 (E.D.N.Y.); *Ehrich*

*v. M.A.R.S., Inc.*, ECF no. 1:11-cv-03059 (E.D.N.Y.). This record suggests that Ehrich may be deliberately defaulting on his debts in order to provoke collection letters which are then combed by his lawyer for technical violations of the FDCPA.

In the present case, defendant argues that Ehrich lacks standing to pursue his claim under the FDCPA, as he has suffered no actual injury. Article III requires, at an "irreducible constitutional minimum," that the plaintiff establish standing through a showing of three factors: (1) an injury in fact, (2) that is fairly traceable to the defendant's alleged conduct, and (3) that is likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Allen v. Wright*, 468 U.S. 737, 751 (1984). At issue here is the first standing requirement, injury in fact. To demonstrate injury in fact, the plaintiff must show that he has suffered a harm that is "concrete" and "actual or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

Ehrich has suffered no actual injury stemming from CPA's allegedly illegal collection notice. In fact, Ehrich has admitted that he speaks no Spanish; he thus could not have been misled by the Spanish phrases in the collection notice. The possibility that the collection notice's limited use of Spanish might mislead a debtor who speaks only Spanish is immaterial to the issue of Ehrich's standing in this case. In order to meet the constitutional requirements for standing, "the plaintiff must still allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Ehrich cannot meet this burden.

Ehrich argues that the FDCPA provides for statutory standing in the absence of actual damages because it confers on the district judge the discretion to award liquidated statutory damages of up to $1,000. 15 U.S.C. § 1692k(a)(2)(A). Nevertheless, the FDCPA's statutory

3

damages provision is insufficient in itself to confer standing upon a plaintiff who has no other basis for his or her claim. As the Supreme Court observed, "[a]n interest unrelated to injury in fact is insufficient to give a plaintiff standing." *Vermont Agency of Natural Resources v. Stevens*, 529 U.S. 765, 772 (2000). In *Vermont Agency*, the Supreme Court considered whether a plaintiff suing under the *qui tam* provision of the False Claims Act ("FCA") had standing to assert his claims because the injury alleged in the suit was suffered only by the United States. The plaintiff's only interest in the litigation was the "bounty," in the form of a percentage of the proceeds of the suit, he stood to receive under the FCA's *qui tam* provision if his suit succeeded. The Supreme Court firmly rejected the notion that this monetary interest in the suit's outcome sufficed for standing, comparing the plaintiff's interest under the *qui tam* provision to that of "someone who has placed a wager on the outcome." *Id.* While the Court in *Vermont Resources* did ultimately hold that the plaintiff had standing to proceed with his FCA claim, its holding rested on a theory that the plaintiff was essentially an assignee of the United States. *Id.* at 774-75.

As *Vermont Resources* makes clear, Article III requires that the plaintiff's interest in the suit "consist of obtaining compensation for, or preventing, the violation of a legally protected right" in order for standing to exist. *Id.* at 772-73. Here, Ehrich cannot plausibly claim that his personal rights under the FDCPA were violated by the inclusion, in an otherwise unobjectionable collection notice, of Spanish phrases that he does not even understand. Nor does the FDCPA's statutory damages provision confer standing in the absence of actual injury. Ehrich's financial stake in the case, in the form of the statutory damages potentially available to successful FDCPA plaintiffs, is akin to a "wager on the outcome" of the litigation, an interest clearly insufficient under the Supreme Court's standing analysis.

4

Ehrich relies on one of the other eight cases that he commenced and which was similarly based on the inclusion of some Spanish language in a collection notice. *Ehrich v. I.C. Sys.*, 681 F. Supp. 2d 265, 269-70 (E.D.N.Y. 2010). The district judge there based a finding of standing on a footnote in a Supreme Court case which observed in dictum that Congress has the power to "enact statutes creating legal rights, the invasion of which creates [constitutional] standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973), *quoted in I.C. Sys.*, 681 F. Supp. 2d at 269 n.6. However, this passage cannot properly be read to eliminate the "injury" requirement from standing analysis altogether. The two cases cited in the *Linda R.S.* footnote—*Trafficante v. Metropolitan Life Insurance Company* and *Hardin v. Kentucky Utilities*—underscore this point.

In *Trafficante*, the Supreme Court held that two tenants in an apartment building had standing to sue the owner of their building for discrimination under the Civil Rights Act of 1968, even though neither tenant had been denied the opportunity to live in the building due to discrimination. 409 U.S. 205 (1972). This holding, however, relied upon the fact that both tenants had pled a personal injury: they had been deprived of the benefits of living in an integrated community, which was a cognizable injury under the Civil Rights Act of 1968. *Id.* at 209-210. Indeed, Justice White's concurring opinion, which is specifically cited in *Linda R.S.*, similarly observes that the Civil Rights Act of 1968 expanded the class of injuries sufficient for standing to include those in the plaintiffs' position. *Id.* at 212.

In *Hardin*, a private utility company sued to compel the Tennessee Valley Authority ("TVA") to cease competitive activities from which the plaintiffs had suffered economic harm. 390 U.S. 1, 6 (1968). While injury from competition is normally not actionable, the statute there

5

at issue was designed to protect private utility companies from such competition by the TVA. This injury, resulting from a violation of the statute, provided the basis for standing. *Id.* at 6-7.

While neither *Trafficante* nor *Hardin* supports a definition of "injury" broad enough to encompass Ehrich's claims, it follows from the reasoning in *Trafficante* and *Hardin* that Congress may "define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant." *Vermont Agency*, 529 U.S. at 773. Some legal rights conferred by the FDCPA easily satisfy this standard. Section 1692d, for example, sets out a number of instances of injury that a plaintiff may suffer as the result of conduct by a debt collector that may not cause him monetary loss but subjects him to "harass[ing], "oppress[ive], or abus[ive]" behavior. 15 U.S.C. § 1692d. Specific, although nonexclusive, violations which may cause such injury include:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
> (4) The advertisement for sale of any debt to coerce payment of the debt.
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

*Id.* Similarly, coming within the definition of harassing and abusive behavior is a collection letter demanding legal fees that were not provided for in the instrument creating the debt nor permitted by law, in violation of FDCPA § 1692f(1). *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003).

By contrast, Ehrich's receipt of the collection notice from CPA, a notice that contained all disclosures required by the FDCPA and that Ehrich fully understood, simply does not

constitute a cognizable injury, statutory or otherwise, sufficient to support standing. Nor does the class action nature of the complaint change this result. The choice to present a case as a class action rather than an individual claim "adds nothing to the question of standing," *Lewis v. Casey*, 518 U.S. 343, 357 (1996), because Rule 23 "does not relax this jurisdictional requirement." *Denny v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006).

## CONCLUSION

While a plaintiff need not demonstrate actual damages for standing in an FDCPA case, the plaintiff must at least allege some personal injury or intrusion of a personal right protected by the FDCPA. Ehrich has not pled any personal injury resulting from the deprivation of the protection afforded debtors by the FDCPA. Under these circumstances, the "irreducible constitutional minimum" of standing has not been met. CPA's motion for summary judgment is granted, and Ehrich's motion for judgment on the pleadings is denied.

SO ORDERED.

Brooklyn, New York
September 19, 2012

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge